GREESON v. GERMAN NATIONAL BANK.

Opinion delivered March 10, 1906.

1.  MORTGAGE—FUTURE INDEBTEDNESS.—Before an instrument intended as a mortgage will be construed to secure indebtedness for subsequent advances, it must appear that there was an unequivocal agreement to that effect.  (Page 145.)

2.  PLEDGE—WAIVER.—Where a bill of sale and note executed to a bank recited that certain chattels were deposited as collateral security for its payment, and that the surplus, if any, after payment of the note should, at the holder's election, be paid on any other obligation of the maker, if the note can be treated as creating a lien on the chattels themselves for future indebtedness, such lien was waived if the chattels were sold by a trustee in bankruptcy of the maker, and the note paid in full to the bank, which returned the bill of sale and note marked "Paid."  (Page 146.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; reversed.

### STATEMENT BY THE COURT.

In August, 1902, the Longview Lumber Company of Prescott, Arkansas, made a contract for the purchase of certain steel rails which were located on a branch railway at Harlow, in Calhoun County, and which the company desired to use at Prescott, Arkansas.  To carry out this contract, the company borrowed $3,000 from the German National Bank of Little Rock, and executed to the bank a note, in the form used by banks, in words and figures as follows:

"3,000.                    Little Rock, Ark., August 15, 1904.

"Ninety days after date we promise to pay to the order of the German National Bank, of Little Rock, three thousand dollars, for value received, negotiable and payable without defalcation or discount at the German National Bank, with interest after date at the rate of ten per cent. per annum until paid, having deposited or pledged with the said German National Bank, as collateral security for the payment of this note, about six miles of 20-pound and 30-pound relaying steel rails, as per bills of sale this day executed—said rails now being moved from Harlow, Arkansas, to Prescott, Arkansas.  Now, in the event of the nonpayment of this note at maturity, the holder thereof is hereby invested with

full authority to use, transfer, hypothecate, sell or convey the said property, or any part thereof, or cause the same to be done at public or private sale, with or without notice or demand of any sort, at such place and on such terms as the said holder hereof may deem best, and the holder of this note is authorized to purchase said collateral when sold for its own protection, and the proceeds of such sale, transfer or hypothecation shall be applied to the payment of this note, together with all protests, damages, interests, costs and charges due upon the note, or incurred by reason of its non-payment when due, or in the execution of this power. The surplus, if any, after payment of this note, together with all charges above stated, shall be paid to the drawer of this note, or, at the election of the holder thereof, be paid on any other obligation of the drawer hereof; and if the proceeds of sale shall not be sufficient to pay this note, the drawer hereof agrees to make good any deficit. If at any time before the maturity of this note said collateral should depreciate below their present value, which it is estimated at $———, the holder thereof is hereby authorized to demand additional security. Upon refusal or inability to comply with said demand, the holder is authorized to sell said collateral at any time before maturity of this note.

> "LONGVIEW LUMBER COMPANY.
>
> "By Geo. W. Howell, Pt."

This note was indorsed by M. W. Greeson. Greeson had no connection with the lumber company, either as stockholder or officer, but had been employed by the company as attorney. To further secure the note, the lumber company executed an absolute bill of sale of the rails to the bank, in which bill of sale the consideration is set out as $3,000.

Afterwards the bank from time to time advanced other sums of money to the lumber company, and took other security therefor.

The company failed in business. A trustee in bankruptcy took charge of the property of the company, including the steel rails; and this property was afterwards sold by the trustee under order of the United States Court, and purchased by Greeson. Greeson took charge of the property, and paid the three thousand dollars collateral note executed by the Longview Lumber Com-

pany to the bank with interest, and the bank returned the bill of sale and note, the note marked "Paid."

Before or about the time this note was paid by Greeson the bank brought suit against him to recover the amount of the $3,000 note and interest, and subsequent indebtedness due from the lumber company to the bank, the bank claiming that the indebtedness contracted after the execution of the bill of sale to the rails was a lien on the rails, and that Greeson took them by his purchase at the receiver's sale charged with that lien.

Greeson filed an answer, in which he alleged that he had paid the note for $3,000, and denied that the bill of sale was executed for the purpose of securing the subsequent indebtedness as claimed by plaintiff. He further set up facts which he alleged estopped the bank from asserting a lien on the rails for the subsequent debts.

On the hearing the chancellor found that the subsequent debts were a lien on the rails; that the rails had been sold by Greeson for $4,009.06; that the note to the bank with interest was a first lien on the rails, amounting to $3,291.67, which sum had been paid by Greeson to the bank, and that the bank was entitled to a judgment against Greeson for the balance, and judgment was entered accordingly.

Greeson appealed.

*McRae & Tompkins,* for appellant.

For distinction between a pledge and a mortgage of personal property, see 4 L. R. A. 305; 18 Am. & Eng. Enc. Law (1 Ed.), 190, note. The filing of a mortgage is not legally equivalent to actual delivery and continued possession. 21 Minn. 91. Voluntary re-delivery of pledged articles to the pledgor forfeits all rights acquired in the security. 49 Am. Dec. 733, note, and cases cited. If it was a pledge, permitting the pledgor or assigns to take possession and sell the property avoided the pledge. *Ib.;* 22 Am. & Eng. Enc. Law (2 Ed.), 853. But the bill of sale was only a mortgage, of which actual notice was not binding. 40 Ark. 536; 71 Ark. 517; 68 Ark. 168; Kirby's Digest, § 5396, note b. The bill of sale was not entitled to record. A surety on a note secured by a mortgage is disqualified from taking the mortgagor's acknowledgment. 68 Ark. 162. If a defeasance is not recorded,

it is postponed to a judgment creditor of subsequent date. 38 Me. 447. Appellant was not chargeable with notice of the "other indebtedness" clause in the note. 55 Ark. 569.

*Ratcliffe & Fletcher,* for appellee.

1. It is immaterial whether the bill of sale be treated as a pledge or a mortgage. If a mortgage, title vested without regard to possession. But in this case the bill of sale purports to convey absolutely. After the debt became due neither the lumber company nor trustee in bankruptcy had title. He could only assert a claim in equity, and could have asserted no claim in equity that was not superior to the equities of appellee. 14 Ark. 370.

2. In the absence of proof, the court will not presume that appellant was the signer of the acknowledgment. The question not having been raised by the pleadings or proof, it can not be raised here. 12 Ark. 190.

3. Appellant was put on notice that the bank claimed an additional amount, and that in order to redeem the trustee or purchaser would be required to pay the additional amount. 124 Fed. 968; 12 Ark. 581.

4. The bank is not estopped. Appellant knew the provisions of the note, that the bank was claiming an additional amount, that the cashier had no authority to waive its lien, and it was not sufficient for him to rely on the fact that the bank granted him a loan and took the same property as security. 49 Ark. 218; 63 Ark. 300; 55 Ark. 642; Bigelow on Est. (2 Ed.), 438, 439; 6 Allen (new), 423; 10 *Id.* 433. The bill of sale gave the bank such title that all persons must take notice thereof, precluded the assertion of any claim against that of the bank, and gave it a lien by operation of law. 1 Morse on Banking, § 324 *et seq.;* 62 Ark. 220; 124 Fed. 968.

RIDDICK, J., (after stating the facts.) This is an appeal from a judgment of the Pulaski Chancery Court, holding that the German National Bank had a lien on certain rails claimed by defendant Greeson. The rails were at one time the property of the Longview Lumber Company, and, while they were the property of that company, the company borrowed $3,000 from the bank, gave a note therefor, and executed a bill of sale for the rails to the bank to secure the note. Afterwards the company became

bankrupt, and the rails were sold by the trustee in bankruptcy, and purchased by Greeson. The $3,000 note to the bank has been paid, but the bank claims that, by virtue of the note and bill of sale above referred to, the bank had a lien on the rails, not only for the $3,000 and interest, but also for subsequent loans made by it to the lumber company.

Now, in the first place, there is no claim that there was any subsequent agreement by the lumber company with the bank that the bank should hold the rails for these subsequent advances. These subsequent advances were in each instance secured by transfer of bills of lading for shipments of lumber. When the cashier of the bank was asked whether at the time they were made anything was said about the rails standing as security for them also, he replied that he did not remember that anything was said about it at the time the loans were made, but he said that on several occasions when the bank refused to make such advances to the company, Howell, the president of the company, had said that the bank had the rails, which were greater in value than the specific obligation they were given to secure. This testimony, which is all the evidence on that point, shows clearly that there was no agreement, subsequent to the execution of the note for $3,000, that these rails should be held by the bank as security for subsequent advances. So, if the bank has any lien on these rails, it must rest on the note and bill of sale given at the time the loan for $3,000 was made to the company.

This bill of sale, though in the form of an absolute transfer of title, was executed to secure a debt, and was in equity only a mortgage. In the case of *Martin* v. *Halbrooks,* 55 Ark. 569, Chief Justice COCKRILL said that "an unequivocal agreement in a mortgage that the instrument shall secure all indebtedness of whatever nature that may be due from the mortgagor to the mortgagee at a future date named would not be invalid between the parties for want of certainty." Now, we agree with the contention of the bank that, as the bill of sale was absolute in form, there was no requirement that the note given at the same time should be recorded, for equity would not set aside such conveyance and permit a redemption without requiring the mortgagee or party holding under him to do equity by paying the debt secure by the absolute bill of sale. The bill of sale was recorded,

and that was sufficient to notify all persons dealing with the property conveyed that the bank claimed an interest in it. But, to create a lien on this property for subsequent debts, it should appear that there was, to quote the language of Judge COCKRILL, "an unequivocal agreement to that effect." Now, there does not appear to be an express stipulation in the note sued on that the bank should have a lien on these rails for subsequent debts. The note is, no doubt, in the usual form required by the bank of borrowers where collateral was deposited to secure the loan. It speaks of these rails as having been deposited with the bank as security for the payment of the note and interest, though as a fact the rails were never delivered to the bank.

The only reference to the subsequent debts in the note is found in that part of the note which deals with the disposition of the proceeds of the rails in the event they were sold to pay the debt. The language of the note clearly intimates that the debtor has the right to redeem the rails at any time before such sale by paying the amount of the three-thousand-dollar loan and interest. But the note provides, in the event that the debt is not paid, and the rails are sold by the bank, that "the surplus, if any, * * * shall be paid to the drawer of the note, or, at the election of the holder thereof, be paid on any other obligation of the drawer hereof." This language seems to give the bank a lien, not on the rails, but on any funds arising from the sale of the rails by the bank, in the event that the note was not paid. But, if we treat this rather equivocal language as creating a lien on the rails in favor of the bank for any subsequent debts due from the lumber company to the bank, it was a lien that the bank could waive. If the rails had been sold by the bank, and after payment of the note a surplus had remained, it could, perhaps, under this provision have applied it to other debts due it from the company. The note says that it could be done at "the election" of the bank. But if, instead of making such a disposition of the proceeds, it had elected to return such funds to the maker of the note, it is clear that afterwards the bank could not recall such action and demand the return of such funds. In this case the rails were never sold, for the party who purchased the rails at the sale by the trustee in bankruptcy, and who succeeded to the rights of the owner thereof, paid the note and interest in full. The bank thereupon

returned to him the bill of sale and the note marked "Paid." This was an election by the bank not to claim any lien on the rails for other indebtedness; and if it had any lien for such debts, it thereby waived it. But this action of the bank, together with the doubtful language of this note and the other circumstances under which the note was made, convinces us that this bill of sale was executed to the bank as security only for the loan of $3,000 and interest, and that the bank has now no right to hold these rails for loans made to the lumber company after the execution of the bill of sale in question. After consideration of the matter, we are of the opinion that there is no equity in the complaint.

The judgment is therefore reversed, and the action of plaintiff is dismissed for want of equity.