HOLT *v.* GREGORY.

4-9632                                              244 S. W. 2d 951

Opinion delivered January 7, 1952.

Rehearing denied February 4, 1952.

*Bon McCourtney, Claude B. Brinton* and *E. D. Mc-Gowan,* for appellant.

*W. H. Howard,* for appellee.

HOLT, J. January 23, 1948, L. M. Simmons, operator of a cafe, gave his note to the Citizens Bank of Jonesboro for a loan of $2,400, with his sister-in-law, Lois Cain, and appellant, Holt, as sureties thereon. On the same day, he also executed, as additional security, a chattel mortgage covering the fixtures of the cafe, which contained these recitals: ''For the purpose of securing payment of debt and the note evidencing the same, and all renewals and extensions thereof, and all additional loans and advances which may hereafter be made by the mortgagee, its successors or assigns to the mortgagor, whether made before or after the maturity of the note described herein and during the life of this mortgage, whether evidenced by note or notes, and any and all other present or future liability of the mortgagor to the mortgagee, its successors and assigns, does hereby sell, assign, transfer and etc. the following described personal property:

''2 Floor Vannado fans, 1720, 1703 (and other personal property) 'including all tools and equipment on said premises, or to be placed thereon, during the life of this mortgage, together with all the natural increase of any and all live stock herein conveyed up to the foreclosure of this instrument and the produce therefrom, together with all personal property of like nature and description acquired by the mortgagor during the life of this mortgage.' * * *

''Now if the mortgagor shall well and truly pay the mortgagee the sum hereinbefore mentioned, when due,

and all other indebtedness which may be due the mortgagee at any time before or at date of foreclosure hereof, together with the cost of this trust, then this conveyance shall be void, etc.''

On March 8, 1949, the bank duly assigned the note, without recourse, to W. B. Howard, who in turn assigned to appellee, Gregory. January 29, 1949, and subsequent to the making and due date of the above $2,400 note described in the mortgage,—but within the life of the note and mortgage,—L. M. Simmons executed another note, a new obligation to the bank, in the amount of $700, with Lois Cain Gregory signing as surety, and on March 8, 1949, the bank assigned this note to W. B. Howard.

The $2,400 note became due January 23, 1949. Simmons was unable to pay this note when due, turned the cafe over to appellee, Mode Gregory, Lois' husband, to operate, but this proved unsatisfactory and a sale of the mortgaged property was had on April 7, 1949, about one month after the $700 note became due. The balance due on the $2,400 note, when the sale was had, amounted to $1,450 and Holt, appellant, bid this amount, paying the money to appellee, Gregory, who first applied this $1,450 in payment of the $700 note, instead of applying the full amount on the $1,450 note on which Holt was surety for Simmons, as Holt contends he should have done.

The record also reflects that the two floor fans covered by the mortgage and part of the cafe equipment had been exchanged for two suction window fans and these suction fans were removed from the cafe prior to the above sale and are now claimed by, and in the possession of, Gregory and valued at more than $200.

The present suit was filed by appellee, Mode Gregory, against appellant, Holt, alleging ownership of the above $2,400 note, (L. M. Simmons being the maker and Holt and Lois Cain as sureties thereon), that it was due and unpaid, sought to recover an alleged unpaid amount of $847.82 and interest, a total of $1,160.72. On Holt's motion, Simmons and Lois (Cain) Gregory, were made defendants and Holt filed a cross-complaint against Sim-

mons and Lois in which he prayed: "If the plaintiff recovers judgment against the defendant, J. E. Holt, in any amount, he prays the court that he have judgment against the defendants, L. M. Simmons and Lois Cain Gregory in the amount of said judgment."

All defendants answered with general denials.

On a trial, a jury having been waived, the court dismissed, without prejudice, Holt's cross-complaint against Simmons and Lois Cain Gregory as premature, entered judgment against Holt in favor of appellee, Gregory, for $1,262.71, with interest from February 14, 1951.

This appeal followed.

For reversal, appellant says: (1) "The court erred in overruling the Motion of the defendant to transfer to equity." (2) "The Court erred in ruling that the mortgage covered the note for $700," and that this note "in so far as the assignee of the mortgage was concerned it was a debt antecedent to the mortgage" and "in so far as the Bank or the Mortgagee was concerned, it was a debt subsequent to the mortgage," and (3) "The Court erred in ruling that this mortgage did not cover all the stock, fixtures and equipment of the business identified in the mortgage."

—(1)—

There was no error in the trial court's failure to transfer to equity. The record does not show that the court made any ruling on appellant's motion to transfer, or was asked for a ruling thereon, and further since appellant, subsequent to filing his motion to transfer, filed an amended answer, he waived his motion to transfer. We so held in *Kaplan* v. *Scherer*, 205 Ark. 554, 169 S. W. 2d 660.

—(2) and (3)—

We hold that the court correctly held that the mortgage here secured the $700 note in addition to the $2,400 note. As indicated, this $700 note was executed subsequent to the execution and due date of the $2,400 note,

but within the life of the chattel mortgage here involved. The securing clause here covered all additional advances and loans and specifically provided "whether made before or after the maturity of the note described herein and during the life of this mortgage."

On this point, our holding in *State National Bank* v. *Temple Cotton Oil Company,* 185 Ark. 1011, 50 S. W. 2d 980, is controlling. In that case, the instrument contained a clause (the same in effect as the one here involved) securing "all future advances during the life of this trust" and wherein notes were executed at various times ranging from six months to four years and four months after the maturity of the last note described in the mortgage, we said: "The notes to the oil company covering advances, as herein stated, were all taken before the $4,903.96 note, specifically described in the deed of trust, was barred. The trust created by that instrument had not therefore been discharged when the notes here involved were taken, and they were therefore advances made within the life of the trust."

We hold, in the circumstances here, where there was no agreement to the contrary, that appellee had the right to apply the $1,450 (proceeds from the sale, *supra*) first to the $700 note and the balance on the $2,400 note. The assignee of the bank stood in the shoes of the bank.

The rule is well established that where, as here, collateral is sold, the creditor has the right to apply the proceeds to the unendorsed part (the $700 note here) of the debt. Such is the effect of our holding in *The White River Production Credit Association* v. *Griffin,* 198 Ark. 249, 128 S. W. 2d 701, where we said: " 'The creditor may, in the absence of a special pledge to a particular debt, apply the proceeds of collateral to debts of the principal on which the surety or guarantor is not bound, in preference to debts on which he is bound, assuming that both classes of debts are covered by the collateral.' As stated above, there was no 'special pledge to a particular debt' in said mortgage. The $1,000 note stood on a parity with the other advances. . . .

"It is perfectly manifest that it was the purpose of all parties, appellant and appellees, that Koettel and Heffington should indorse said $1,000 so as to give appellant additional security for said note over and above the property covered by the mortgage. Such being the purpose of the indorsement, it would be frustrated and rendered valueless to require the application of the proceeds of the mortgaged property first to the discharge of the indorsed note, for if all or a substantial part of such proceeds should be required to discharge the indorsed note, leaving some of the unindorsed notes unpaid, the creditor would have no security for their payment. The Supreme Court of Florida expressed the same view in *Consolidated Naval Stores Co.* v. *Wilson,* 82 Fla. 396, 90 So. 461, 21 A. L. R. 681, as follows:

" 'If it was the purpose of the creditor to take additional security in the form of an indorsement of some of the notes, and the indorser met the creditor upon that proposition, it would be inequitable and manifestly unjust to require the application of the proceeds of the mortgaged property to be applied first to the indorsed notes, for the whole purpose of the additional security would be destroyed by such application.'

"Appellees Koettel and Heffington, having indorsed said note for the purpose of giving appellant security in addition to the mortgaged property, cannot be permitted to destroy the very purpose of their indorsement and escape the consequences of their own voluntary act."

We think, however, that the two window suction fans, for which the two floor fans described in the mortgage had been exchanged, and which were attached to the cafe, came within the mortgage description and were covered. As indicated, the mortgage specifically included "the following described personal property: 2 floor Vannado fans, 1720, 1703 . . . together with all personal property of like nature and description acquired by the mortgagor during the life of this mortgage." Appellant was therefore entitled to a lien on these fans, or their value,—the proceeds to be applied on the judgment that appellee obtained against appellant.

Accordingly, the judgment is reversed and the cause remanded.