**NATIONAL BANK OF EASTERN AR-KANSAS, Appellant,**

v.

**GENERAL MILLS, INC., et al.,**
**Appellees.**

**No. 16458.**

United States Court of Appeals
Eighth Circuit.

Nov. 8, 1960.

E. J. Butler, Forrest City, Ark., for appellant.

N. M. Norton, Forrest City, Ark., for appellees; Osro Cobb, U. S. Atty., and Ralph M. Sloan, Asst. U. S. Atty., Little Rock, Ark., and Norton & Norton, Forrest City, Ark., on the brief, for appellees.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and REGISTER, District Judge.

VAN OOSTERHOUT, Circuit Judge.

The appellant National Bank of Eastern Arkansas, hereinafter sometimes referred to as the Bank, a plaintiff below, appeals from the portion of the final judgment that determines that the trust deeds the Bank was seeking to foreclose did not secure certain antecedent and subsequent debts owing to it by the mortgagor. The trial court in its opinion reported at 177 F.Supp. 667,[1] gives a fair and complete description of the trust deeds and the notes involved in this litigation and sets out the pertinent facts.

The basic facts are that Noah Blankenship gave the Bank three separate trust deeds, one given on June 16, 1956, covering a store, one given on December 5, 1953, covering a farm, and one given on September 8, 1951, covering the mortgagor's home. Each of the trust deeds, after providing that it secured a specific note, contains a broad provision to the effect that it secures antecedent debts and subsequent advances. Such provisions contained no description of the antecedent debts nor did they expressly limit the nature of the subsequent advances. The trust deed on the home provided "that this note and trust deed is to secure the third party for any other indebtedness we, or either of us, now or may hereafter owe it, either as principal, endorser or otherwise and until paid in full and St. Francis County records are satisfied." The provisions in the other trust deeds varied somewhat but were of the same general effect.[2]

At the time this action was commenced, the Bank owned nine notes for advances it made to Blankenship between December 22, 1955, and April 11, 1957. All of these advances were made subsequent to the first two trust deeds and seven of the nine notes were subsequent to the last trust deed.[3] The unpaid principal of such notes aggregated $1,164.50.

Plaintiff Swan owned a mortgage, not in controversy on this appeal, on the home prior in point of time to the Bank's trust deed, but the lien of such mortgage was subordinated to the Bank's lien.

In July 1956 Blankenship gave defendant General Mills, Inc., a deed of trust covering the three parcels here involved as security for an antecedent debt and in

---

1. The trial court in its opinion and judgment made determinations upon other issues not involved in this appeal. We confine our discussion to issues raised by the appeal.

2. See pages 669, 670 of 177 F.Supp. for forms of these provisions.

3. The notes are described in detail in footnote 3, at page 671, of 177 F.Supp.

October 1956 Blankenship gave Cameron Feed Mills, Inc., a mortgage on the three parcels to secure an antecedent indebtedness owing it. The Commissioner of Labor of the State of Arkansas holds a junior lien upon the mortgaged property. These defendants by appropriate pleadings asserted their liens to be prior to those of the Bank.

The United States of America is the owner of two mortgages on the farm originally given to the Guardian Company to secure F. H. A. loans and later assigned to the government. The unpaid balance on these loans is $832.97. These mortgages were subsequent in time to the Bank's trust deed covering the farm. The government answered and cross-claimed for the foreclosure of its liens, asserting priority.

This action was originally commenced in the Arkansas State Court and was transferred to this court upon petition of the United States of America, pursuant to 28 U.S.C.A. § 1444. The government asserts jurisdiction on its cross-claim under 28 U.S.C.A. § 1345. The court acquired jurisdiction of this action pursuant to the foregoing statutes.

■ It is noted at this point that jurisdiction is not based upon diversity of citizenship. Diversity of citizenship has not been established. Consequently, the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 does not apply. United States v. Standard Oil Co., 332 U.S. 301, 307, 67 S.Ct. 1604, 91 L.Ed. 2067; United States v. McCabe Co., 8 Cir., 261 F.2d 539, 543.

■ The parties and the trial court all took the position that Arkansas law controls on the issues presented by this appeal. No one contended, either in the trial court or here, that Arkansas law does not control the present situation. The government acquired its lien by assignment from the original lien holder, a private corporation. Under these circumstances we see no reason why the law of Arkansas should not be applied. Accordingly, we proceed on the basis that Arkansas law controls.

The trial court held that the Bank under its trust deeds had a first lien upon the respective tracts covered by each of its trust deeds to the extent of the balance remaining due on the indebtedness specifically described in each of such deeds, and granted foreclosure and priority to such extent. The court rejected the Bank's contention that by reason of the dragnet and future advances provisions of its trust deeds it had prior liens upon each of the three parcels of real estate, to secure all of Blankenship's indebtedness to the Bank. The court's holding is based on its determination of Arkansas law, stated by the court as follows:

> "The 'other indebtedness' secured by a mortgage may be either antecedent or subsequent. Where it is antecedent, it must be identified in clear terms, and where it is subsequent, it must be of the same class as the primary obligation secured by the instrument and so related to it that the consent of the debtor to its inclusion may be inferred." D.C., 177 F.Supp. 667, 673.

■ The basic issue raised by this appeal is whether the court reached a permissible conclusion in making the foregoing determination of the applicable Arkansas law. We have frequently called attention to the fact that the power to interpret state laws rests with the supreme court of the state. We have no power to make authoritative decisions on questions of state policy or state law. Our duty in such cases is to attempt to determine what a state court would do if the case were before it. We have repeatedly held that we will not attempt to outpredict or outguess the trial court on a doubtful question with respect to the law of its state. Homolla v. Gluck, 8 Cir., 248 F.2d 731, and cases cited. In the case just cited, we quoted with approval from National Bellas Hess, Inc. v. Kalis, 8 Cir., 191 F.2d 739, 741, as follows:

> " 'We have repeatedly said that, in reviewing doubtful questions of local law, we would not adopt views

contrary to those of the trial judge unless convinced of error, and that all that this Court reasonably can be expected to do in such cases is to see that the determination of the trial court is not induced by a clear misconception or misapplication of the local law. Russell v. Turner, 8 Cir., 148 F.2d 562, 564; Buder v. Becker, 8 Cir., 185 F.2d 311, 315, and cases cited. If a federal district judge has reached a permissible conclusion upon a question of local law, we will not reverse, even though we may think the law should be otherwise.'"

We now examine the trial court's determination of the Arkansas law, applying the foregoing standards. A careful reading of the trial court's opinion satisfies us that the court gave careful and full consideration to the pertinent decisions of the Arkansas Supreme Court. The trial court cites and discusses many Arkansas cases bearing on the problem confronting it. The court concedes that under Arkansas law the parties to a trust deed or mortgage may contract to extend the lien created by such instruments to obligations other than those specifically described, provided they express their intent so to do with sufficient definiteness, and that absent ambiguity, courts must interpret the trust deed in accordance with the intention of the parties as expressed by the language appearing in such instrument.

The court then states that provisions to the effect that security is afforded for indebtedness other than that specifically described are not favored by equity and will be construed rather strictly. In support of such statement, the court sets out pertinent quotations from Berger v. Fuller, 180 Ark. 372, 377, 21 S.W.2d 419, 421, and Hendrickson v. Farmers' Bank & Trust Co., 189 Ark. 423, 73 S.W.2d 725, 729, the latter case quoting supporting language from American Bank & Trust Co. v. First National Bank of Paris, 184 Ark. 689, 43 S.W.2d 248.

The trial court's conclusion as to the applicable Arkansas law heretofore set out is in substance identical with statements of the Arkansas court found in the Hendrickson case, supra, and in Bank of Searcy v. Kroh, 195 Ark. 785, 114 S.W.2d 26. Additional support for the trial court's conclusion is found in Martin v. Holbrooks, 55 Ark. 569, 18 S.W. 1046; Page v. American Bank of Commerce & Trust Co., 167 Ark. 607, 269 S.W. 561; Detroit Fire & Marine Ins. Co. v. Helms, 184 Ark. 308, 42 S.W.2d 394.

The Bank, in support of its position, relies on Hollan v. American Bank of Commerce & Trust Co., 168 Ark. 939, 272 S.W. 654. This case tends to support the Bank's contention and emphasizes that the contract must be interpreted in accordance with the intention of the parties as expressed in the words used in the contract. The Hollan case distinguishes the Page case, supra, on the basis of difference in language and observes that each case of this type must be decided upon its own peculiar facts. The court does state that no opinion is expressed as to what the effect of the language used would be if the rights of subsequent mortgages were involved. Such reserved issue confronts us here.

Moreover, in the subsequent case of Berger v. Fuller, supra, the court states that the Hollan case did not hold that an indebtedness secured by another and different mortgage was secured by the mortgage in suit, explaining that the quotation relied upon "was merely illustrative in its character and in no wise essential to a decision of the question before the court." [180 Ark. 372, 21 S.W.2d 421.]

The Bank places considerable reliance upon Holt v. Gregory, 219 Ark. 798, 244 S.W.2d 951, 953, decided in 1952. So far as we can ascertain, this is the most recent Arkansas case bearing upon our problem. On the surface the Holt case lends some support to the Bank's position. There the mortgage specifically secured a $2,400 note. After the due date of such note but before the note outlawed, the plaintiff obtained an additional note of $700 from the debtor. The mortgage contained a broad provision for

security of additional advances. The court held the $700 note was secured by the mortgage. There is no discussion in the whole opinion as to whether the subsequent $700 advance was for the same class of indebtedness or so related to the primary debt that the assent of the mortgagor would be inferred. The court did not cite or discuss, or seek to distinguish or overrule the prior Arkansas cases relied upon by the trial court such as the Hendrickson and Kroh cases. The court's only citation of supporting authority is contained in the following sentence: "On this point, our holding in State National Bank v. Temple Cotton Oil Company, 185 Ark. 1011, 50 S.W.2d 980, 985, is controlling."

At page 985 of the Temple Cotton Oil Company case, the court states that in early cases an interpretation was made that only subsequent advances made prior to maturity of the note specifically secured would be secured by the mortgage, but that in later cases broad coverage clauses were interpreted to secure advances made up to the time of the foreclosure. We note that at page 983 of the Temple Cotton Oil Company case the court discusses and follows the test prescribed in American Bank & Trust Co. v. First National Bank of Paris, supra, but finds as a matter of fact that the subsequent advance bore a sufficiently close relationship to the subject matter of the primary debt to bring it within the security.

It appears to us that the issue the court decided in the Holt case was that the subsequent advance was timely and that the issue of whether the advance was of the proper class or bore a sufficiently close relationship to the original indebtedness was not considered.

While the cases dealing with the issue before us present varying fact situations, and some cases could be distinguished upon a factual basis, we believe that it may fairly be said that the Arkansas law on the subject matter we are considering is in doubt. The trial court in its opinion has supported its conclusion with a formidable array of Arkansas cases. We have grave doubt whether the Supreme Court of Arkansas in the Holt case either intended to or actually did overrule by implication the precedents relied upon by the trial court. We do not believe the Supreme Court of Arkansas would reverse its position on the issue here in dispute without mention of the prior precedents and without setting forth any reason for the new result.

The Bank has not demonstrated that the trial court's interpretation of the applicable Arkansas law was induced by any misconception or misapplication of Arkansas law. We are satisfied that the trial court in its declaration of the Arkansas law reached a permissible conclusion and that no basis exists for our interference with the trial court's determination of the Arkansas law.

■ The trust deeds on their face show that no antecedent indebtedness is specifically described. Thus the court was justified in finding that no antecedent debt was secured by the trust deeds, and that no intent was expressed that the other indebtedness clause was intended to secure debts primarily secured by the separate trust deeds.

■■ There is also substantial evidence to support the trial court's conclusion that the notes for subsequent advances were not of the same class as the individual loans secured by the respective trust deeds and bore no significant relationship to the loans so secured.

The Bank also urges that the court erred in receiving over its objection testimony as to the nature and purpose of the three original loans secured by the three trust deeds and the nature and the purpose of the subsequent advances. The case was submitted largely upon a stipulated record with the right reserved to introduce testimony upon specific issues not here material. Both parties at the trial and here contend that the evidence as to the nature and purpose of the various loans should not have been received, on the ground that they were beyond the scope of the stipulation and submission agreement, and upon the further ground

that such testimony was irrelevant and immaterial. The trial court admitted the testimony subject to the objection. The court felt that such testimony was material under its view that subsequent advances were secured only if they were of the same class as or closely related to the original loan. The court, as to such evidence, states:

"That evidence has been considered for what it is worth, and the Court does not feel that it is of controlling importance. For that reason it is not deemed necessary to pass upon the objections that were made in the introduction of such evidence." D.C., 177 F.Supp. 667, 672.

Actually, the only apparent effect given to the evidence objected to was that the court concluded that a $19.24 insurance premium note was sufficiently related to the home loan and a $15.90 insurance advance note was sufficiently related to the store loan to entitle the Bank to security for such advances under such respective loans. Under the court's interpretation of the law, if the Bank had established the required similarity of class or close relationship of the advances to any of the original loans, such advances would have been considered secured.

■ We are convinced that the Bank was in no way prejudiced by the reception of evidence as to the purpose of the loans.

■ Finally, the Bank urges that the court erred in denying it a personal judgment against Blankenship upon his nine notes aggregating $1,164.50. Blankenship appeared as a witness at the trial and testified he was subsequently to the execution of the notes here in controversy adjudged a bankrupt and that he had been granted a discharge. The bankruptcy petition and schedules were offered in evidence without objection. No claim is made that the Bank's obligations were not properly scheduled in bankruptcy. The Bank's contention is that Blankenship defaulted and filed no answer, and that the court could not recognize Blankenship's bankruptcy discharge because he failed to set up said defense by answer. It would doubtless have been wiser for Blankenship to assert his discharge as a defense by answer. The general rule is that a discharge in bankruptcy is an affirmative defense which must be pleaded and is a defense which a debtor may waive. Tune v. Vaughan, 170 Ark. 971, 281 S.W. 906; Household Finance Corporation v. Dunbar, 10 Cir., 262 F.2d 112.

The inherent discretionary power of a federal court to protect a bankrupt in his discharge rights under appropriate circumstances has been recognized. Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230; Personal Industrial Loan Corporation v. Forgay, 10 Cir., 240 F.2d 18; State Finance Co. v. Morrow, 10 Cir., 216 F.2d 676; 8 Remington on Bankruptcy, § 3258, p. 92.

This case was tried in the same federal district court which granted the defendant his discharge. Evidence of such discharge was admitted without objection. Testimony of both the bankrupt and the Bank's officers to the effect that no negotiations were had between the Bank and the bankrupt relative to the payment of any deficiency was received. The Bank officer testified that he felt the Bank was well secured and would get the money owing it.

■ While upon this record the court would perhaps have been justified in granting a personal judgment against the bankrupt on his notes, we do not believe that the court was compelled to do so. A court of equity has some discretion in determining the relief it will grant. The validity of defendant's discharge is not challenged. We find nothing in the record to indicate the Bank was in any manner prejudiced by the bankrupt's failure to assert the discharge as a defense by answer. No question of res judicata or interference with the judgment of a state court is here presented. The court had an opportunity to see and hear the bankrupt as a witness and could well have formed an impression that the bankrupt had no intention to waive his discharge rights. We

do not believe that the Bank has shown that the court abused its discretion in refusing to enter a personal judgment against the bankrupt.

The judgment entered is in all respects affirmed.