UNITED STATES of America,
Appellant,

v.

Frank J. FAHRENKAMP, and Fierina G. Fahrenkamp, and Bob Taylor, Collector of Delinquent Personal Property Taxes for Polk County, Arkansas, Appellees.

No. 17119.

United States Court of Appeals
Eighth Circuit.

Feb. 1, 1963.

**628**

Norman Sepenuk, Atty., Dept. of Justice, Washington, D. C., for appellant and John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C., and Charles M. Conway, U. S. Atty., and Robert C. Johnson, Asst. U. S. Atty., Fort Smith, Ark., on the brief.

Joe H. Hardegree, Mena, Ark., for appellees Frank Fahrenkamp and Fierina Fahrenkamp and Ben Core, Pros. Atty., Ninth Judicial Dist. of Arkansas, De Queen, Ark., signed appearance for Boy Taylor but no oral argument or briefs were filed.

Before SANBORN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

The principal question for determination on this appeal is whether certain personal property not specifically described in a chattel mortgage executed by Duncan, Dieckman and Duncan Mining Company, a corporation (Duncan), was nevertheless covered by the lien of the mortgage because of the so-called "dragnet" clause contained therein.[1] The chattel mortgage, executed on March 4, 1959, was recorded on March 23, 1959, and concededly the lien as to all property *specifically* described in the mortgage, was superior to the lien of the United States Government against Duncan for unpaid withheld taxes. The trial court held that the undescribed property was also covered by the mortgage, and hence, in practical effect, the Government's claim was destroyed. For the purpose of this appeal by the Government, the facts, as fully set forth in the opinion of the trial court, W. D. Ark., 205 F.Supp. 921 (1962), will suffice, and since the facts are in the main undisputed, they need only be briefly summarized here.

The chattel mortgage conditionally conveyed to C. C. Bell, for the purpose

---

1. The pertinent part of the "dragnet" clause is " * * * together with all equipment of any kind and character used in connection therewith, and all additions, betterments and repairs made or to be made to or upon said property, * * *."

of securing a loan to Duncan in the amount of $15,000: one Manganese Mill complete, building, motors, jiggs and water pump; one set of scales; six jack hammers; three compressors; and seven trucks, all of which was specifically described. At the time the mortgage was executed, Duncan was the conditional owner and in possession of one Ford Loader and two Caterpillar Loaders. As security for the unpaid purchase prices of the respective loaders, the Merchants National Bank of Fort Smith, Arkansas, held the conditional sales contract to the Ford Loader, and C.I.T. Credit Corporation held the conditional sales contract to the two Caterpillar Loaders. None of the three loaders was described in or referred to in the chattel mortgage nor covered by the mortgage lien unless it was the intention of the parties that the loaders should be encompassed within the mortgage by virtue of the "dragnet" clause.

Fierina G. Fahrenkamp, wife of Frank J. Fahrenkamp, appellees herein, acquired the chattel mortgage from C. C. Bell on March 6, 1959. At the request of Duncan, on August 21, 1959, Frank J. Fahrenkamp, an officer and a stockholder in Duncan, paid the balance due Merchants National Bank ($617) and the balance due C.I.T. ($2,561.14) on the conditional sales contracts. Fahrenkamp purchased drafts payable to these creditors, and forwarded the drafts to Duncan, who delivered them to the Bank and C.I.T. and obtained the conditional sales contracts in return.

In May, 1961, when Duncan was being pressed by its creditors, the Fahrenkamps filed an action in the Chancery Court of Polk County, Arkansas, against the Duncan Corporation, seeking a personal judgment for the balance due them both under the mortgage lien and the conditional sales contracts, and for an order directing the sale of all of the personal property above referred to. The Government, as a creditor of Duncan, intervened in that action and thereafter removed the cause to the United States District Court. None of Duncan's other creditors intervened in the action except the tax collector for Polk County, Arkansas, who filed a claim for alleged unpaid county taxes due from Duncan for the years 1959 and 1960.

Pending the trial, the court directed that all of the personal property be sold and appointed a special commissioner to conduct the sale. The three loaders were sold for a total of $6,500, which, together with the proceeds from the sale of the property described in the mortgage, was deposited in the registry of the court.

The court rendered judgment in favor of the Fahrenkamps and against Duncan for the balance due them; held that the chattel mortgage covered the three loaders by virtue of the "dragnet" clause, and dismissed the Government's intervention; directed that the sum of $321.34 be paid out of the proceeds to Polk County, Arkansas; and further directed that the remainder of the fund, after payment of certain expenses, be paid to the Fahrenkamps to apply upon their judgment against Duncan.

There is no controversy on this appeal as to the personal judgment against Duncan, and since the Government concedes that the lien of the chattel mortgage antedated and is superior to its lien, it makes no claim to the proceeds from the sale of the specifically described property. The issues are: 1) whether the lien of the mortgage extended to the three loaders so that the Fahrenkamps are entitled to the $6,500 derived therefrom; 2) if not, whether the Fahrenkamps were subrogated to the rights of the Bank and C.I.T. so as to be entitled to be paid $3,178.24 out of the $6,500; and 3) whether the court erred in holding that a lien existed in favor of Polk County, Arkansas, on the personal property which was the subject of the foreclosure action, and that such lien was superior to the Government's lien.

The trial court, predicating its decision upon the theory that the "dragnet" clause of the mortgage covered the three loaders in question, apparently was of the opinion that the loaders did not be-

come the property of Duncan Corporation until August 21, 1959, the day on which Fahrenkamp paid off the existing indebtedness on them; that then, as after-acquired property, the loaders became subject to the original mortgage; and thus, that the Fahrenkamps' claim to the loaders based upon the mortgage (recorded March 23, 1959) had priority over the Government's claim first filed on August 13, 1959.

Inasmuch as the loaders were conditionally owned by Duncan and in its possession when the mortgage was executed, we seriously doubt that merely because absolute title thereto was not in Duncan at that time, the loaders were, for the purpose of the mortgage, after-acquired property.[2] But whether such property be viewed as an antecedent or a subsequent acquisition, we are satisfied that it was not covered by the mortgage. Under Arkansas law, it is clear that "dragnet" provisions are not favored and are construed rather strictly. National Bank of Eastern Arkansas v. Blankenship, E.D. Ark., 177 F.Supp. 667, 673 (1959), aff'd National Bank of Eastern Arkansas v. General Mills, Inc., 8 Cir., 283 F.2d 574 (1960); Berger v. Fuller, 180 Ark. 372, 377, 21 S.W.2d 419, 421 (1929). The Arkansas rule as to whether "other indebtedness" is secured by a chattel mortgage by virtue of the "dragnet" clause, is concisely stated as follows:

"Where a mortgage is given to secure a specific debt named, the security will not be extended as to antecedent debts unless the instrument so provides and identifies those intended to be secured in clear terms, and, to be extended to cover debts subsequently incurred, these must be of the same class and so related to the primary debt secured that the

assent of the mortgagor will be inferred. The reason is that mortgages, by the use of general terms, ought never to be so extended as to secure debts which the debtor did not contemplate." Hendrickson v. Farmers Bank & Trust Company, 189 Ark. 423, 434, 73 S.W.2d 725, 729 (1934).

No sound reason appears why the same rule should not apply to "other property," and indeed, the rule as to after-acquired property has been so applied. Holt v. Gregory, 219 Ark. 798, 244 S.W. 2d 951 (1952). Thus, if it be assumed that the undescribed loaders in controversy were antecedent property, the mortgage did not apply thereto since the mortgage not only failed to clearly identify the loaders, but also failed to include even the slightest reference to them. National Bank of Eastern Arkansas v. Blankenship, supra, 177 F.Supp. 667, aff'd 283 F.2d 574; Hendrickson v. Farmers Bank & Trust Company, supra, 189 Ark. 423, 73 S.W.2d 725.

If, as the trial judge apparently concluded, the loaders were subsequently-acquired property, in order to be covered by the "dragnet" clause they would have to be of the same class as the property specifically listed and so related to it that the consent of the parties to its inclusion might be inferred. National Bank of Eastern Arkansas v. Blankenship, supra, 177 F.Supp. 667, aff'd 283 F.2d 574. It is the province of the court to declare the rights of the parties in conjunction with their expressed intention, interpreting each mortgage according to its particular language in the light of the surrounding circumstances. Hollan v. American Bank of Commerce & Trust Company, 168 Ark. 939, 272 S.W. 654 (1925). See also Amer-

---

2. At the time the mortgage was executed Duncan had possession of the loaders, had considerable equity in them, and could have specifically included them within the mortgage, subject to the conditional sales contracts. A purchaser of property under a conditional sales contract has such an interest in the property that he may mortgage it.

Roachell v. Gates, 185 Ark. 350, 47 S.W. 2d 35 (1932); Howell v. Thew Shovel Co., 184 Ark. 777, 43 S.W.2d 366 (1931); Loden v. Paris Auto Co., 174 Ark. 720, 296 S.W. 78 (1927); Thornton v. Findley, 97 Ark. 432, 134 S.W. 627, 33 L.R.A., N.S., 491 (1911). See also Cloud Oak Flooring Co. v. J. A. Riggs Tractor Co., 223 Ark. 447, 266 S.W.2d 284 (1954).

ican Bank & Trust Co. v. First Nat. Bank of Paris, 184 Ark. 689, 43 S.W.2d 248 (1931). We believe that the loaders are of the same class as the other mining equipment specifically denominated in the mortgage, but cannot agree with the lower court on the crucial question relating to the intention of the parties. Fully cognizant of this Court's hesitancy to reverse a federal district judge on a question pertaining to the application of local *law*, National Bank of Eastern Arkansas v. General Mills, Inc., supra, 283 F.2d 574, 576–577; Homolla v. Gluck, 8 Cir., 248 F.2d 731 (1957), under the circumstances of this case, we nevertheless feel compelled to differ with the trial court's *interpretation* of the mortgage agreement to which the Arkansas law was applied. A survey of the record reveals nothing from which it can be inferred that the parties intended the mortgage to encompass subsequently-acquired equipment not listed in the agreement. In fact, in the complaint, the Fahrenkamps' sole claim to the loaders was based upon the allegation that Frank J. Fahrenkamp had assumed the security instruments covering the loaders at the time he paid the balance that Duncan Corporation owed on the loaders to the holders of the conditional sales contracts. In the reply to the Government's complaint in intervention, the Fahrenkamps reiterated their allegation that they had a lien on the loaders "by virtue of the assumption of the conditional sales contracts theretofore held by creditors of the Defendant Corporation," and again, there was no assertion whatsoever that the loaders were covered by the original mortgage agreement. As to this property, the trial proceedings remained focused upon the question whether Frank J. Fahrenkamp was entitled to be subrogated to the rights of the previous holders of the conditional sales contracts until near the completion of the trial when the Court, sua sponte, interjected the "dragnet" clause theory.

C. C. Bell, the original mortgagee, was not called upon to testify as to the intention of the original parties to extend the lien of the mortgage to subsequently-acquired property, and the Fahrenkamps presented no evidence on which to base such an inference. In fact, the testimony of both Donald Duncan, an officer of Duncan Corporation, and Frank J. Fahrenkamp is utterly inconsistent with the conclusion that the loaders were covered by the "dragnet" clause. The following direct examination of Duncan is particularly enlightening:

"Q. Did that mortgage cover all of the property, the personal property that was owned by Duncan, Dieckman and Duncan Mining Company?

"A. No, sir.

"Q. Now, you also are familiar, I believe, with these three loaders in question here, being a Ford Loader and two Caterpillar Loaders, are you not?

"A. Yes.

"Q. Now, were those covered under that mortgage?

"A. To my knowledge they wasn't."

During direct examination Fahrenkamp responded in a similar manner:

"Q. All right. Mr. Fahrenkamp, the mortgage which you came to be the holder of, the chattel mortgage from Duncan, Dieckman and Duncan Mining Company describes certain property that was legally owned by the corporation. Now, then, did the corporation have any equipment or property which was not covered by that mortgage?

"A. Yes, I believe the loaders and the compressors that I loaned them some money on to pay—that I paid off, sent checks down to pay off was equipment that wasn't in the original mortgage."

Although it might be argued that these statements merely refer to the fact that the loaders were not *specifically* denominated in the original mortgage, neither this testimony nor any other evidence

in the record, affirmatively demonstrate an intention for the original mortgage lien to be extended to cover the loaders in question.

■ However, we believe that the Fahrenkamps are entitled to further consideration on their original theory of subrogation. Although this issue was pleaded and actually litigated, in view of the conclusion reached by it, the trial court did not expressly determine the subrogation issue. While there was evidence relating thereto, we make no determination as to the sufficiency of the evidence to establish subrogation by assignment, nor do we decide whether under the facts and circumstances Frank J. Fahrenkamp is entitled to be subrogated under legal or equitable principles. This determination should in the first instance be made by the trial court.

■ As previously indicated, the court also found that Polk County, Arkansas, was entitled to recover $321.34 for taxes due on the property of Duncan Corporation and ordered that amount paid to it out of the funds in the registry of the court. But the record is barren of any evidence to establish the existence or priority of the county's lien, United States v. Buffalo Savings Bank, 83 S.Ct. 314; United States v. New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954), and no one appeared on behalf of the county at either the trial or on this appeal. Accordingly, we cannot allow the judgment in favor of Polk County to stand.

The judgment of the court dismissing the intervention of the Government and ordering the full amount of $6,500 to be paid to the Fahrenkamps is reversed, and the cause is remanded for additional consideration by the court solely on the subrogation issue, with the right of the interested parties to present additional evidence if the trial court deems such presentation necessary. The judgment in favor of Polk County, Arkansas, is reversed. In all other respects the judgment is affirmed.