ARCHER–DANIELS–MIDLAND COMPANY, Plaintiff,

v.

NORTH ARKANSAS MILLING COMPANY, Inc., et al., Defendants.

Civ. A. No. 472.

United States District Court
W. D. Arkansas,
Harrison Division.

Dec. 2, 1961.

Fitton & Adams, Harrison, Ark., for plaintiff.

Thomas B. Tinnon, Mountain Home, Ark., for the Stewarts and The Peoples Bank.

Clyde Rogers, Gainesville, Mo., for Gladys Reichelt.

JOHN E. MILLER, Chief Judge.

This case is a foreclosure suit by the plaintiff, Archer-Daniels-Midland Company, hereinafter referred to as ADM, against North Arkansas Milling Company, Inc., Jack Stewart, Dorothy L. Stewart, The Peoples Bank of Mountain Home, Ark., and others.

ADM obtained a judgment against North Arkansas and the Stewarts, jointly and severally, in the sum of $82,058.-49. A lien was declared on North Arkansas' property, as set forth and described in the plaintiff's mortgage. The defendant bank also obtained a judgment against North Arkansas in the sum of $15,198.71, plus $825.00 attorneys' fees. A lien was declared on the property of the mortgagee, North Arkansas, as set forth and described in the bank's mortgage.

The mortgages were foreclosed and a sale of the property ordered. The property sold for the sum of $16,675.00.

Out of this sum the costs of the sale amounting to $683.00 have been paid, and also the attorneys' fees for the defendant bank in the sum of $825.00 have been paid, leaving in the registry of the court the sum of $15,167.00.

The mortgage held by the defendant bank was executed, acknowledged and delivered on November 16, 1957, and by its terms secures the payment of indebtedness, described as follows:

"$17,500.00 due and payable $500.-00 December 16, 1957, and $500.00 on or before the 16th of each month thereafter until paid in full, together with interest at the rate of 6% per annum. Interest payable monthly in addition to principal. And this mortgage is intended to secure to mortgagee, its successors and assigns, the due payment of said indebtedness, and the due payment of all other indebtedness now owed, or which mortgagor may hereafter owe to mortgagee, and any renewal and/or extension thereof, with interest thereon at the rate of 6 per centum per annum, and to the time of payment thereof."

On May 29, 1959, North Arkansas and Jack Stewart executed, acknowledged and delivered a chattel mortgage to ADM to secure certain indebtedness described in the mortgage. The mortgage provides that it "is intended to secure to the mortgagee, its successors and assigns, the due payment of said indebtedness and any renewal and/or extension thereof, with interest as provided in said notes and contract to the time of payment thereof."

Thus, it will be observed that the mortgage held by the defendant bank contains what has sometimes been referred to as the "dragnet clause," while the mortgage held by ADM does not purport to secure the payment of any indebtedness except that specifically men-

tioned in the mortgage together with any renewals of the specifically described indebtedness.

Thus, the primary question is whether the payment of the notes executed by North Arkansas and the Stewarts to the defendant bank, contemporaneously with or subsequent to the execution of the chattel mortgage on November 16, 1957, is secured by the mortgage held by the bank.

Most of the relevant facts were stipulated as follows:

"8.

"The Peoples Bank of Mountain Home, Arkansas, had participated, aided and assisted in the financing of North Arkansas Milling Company, Inc.'s operation and business from its inception even back as far as the formation of the original partnership, out of which the North Arkansas Milling Company, Inc. evolved. Of this, Archer-Daniels-Midland Company had knowledge.

\* \* \* \* \* \*

"11.

"On September 24, 1957, North Arkansas Milling Company, Inc. executed and delivered to the Peoples Bank of Mountain Home, Arkansas, a promissory note in the sum of $1,200.00 bearing interest at the rate of 6 percent per annum, payable upon demand. This $1,-200.00 was loaned by the Peoples Bank to North Arkansas Milling Company, Inc. as current operating capital. This promissory note was identified as Exhibit 'C' to the defendant's, Peoples Bank, separate answer filed herein. On foreclosure date there was due thereon $1,200.-00 principal and $153.63 interest.

"12.

"On November 16, 1957, North Arkansas Milling Company, Inc. executed a promissory note payable to the Peoples Bank of Mountain Home, Arkansas, in the sum of $17,-500.00 bearing interest at the rate of 6 percent per annum, payable $500.00 on or before the 16th day of each month thereafter until paid in full, principal and interest. The $17,500.00 was loaned to North Arkansas Milling Company, Inc. to retire debts and obligations of the borrower in connection with its mill equipment and to provide additional working capital for its operation, including the procurement of grain and other ingredients necessary for the preparation of feed and delivery thereof to the broiler house. On foreclosure date there was due thereon $5,000.00 principal and $567.50 interest.

"13.

"Also on November 16, 1957, North Arkansas Milling Company, Inc. caused to be executed and delivered to the Peoples Bank of Mountain Home, Arkansas, a chattel mortgage covering the fixed assets of North Arkansas Milling Company, Inc., which mortgage provided among other things specifically: 'This mortgage is intended to secure to mortgagee, its successors and assigns, the due payment of said indebtedness and the due payment of all other indebtedness now owned or which mortgagor may hereafter owe to mortgagee and any renewal and/or extension thereof with interest thereon at the rate of 6 percent per annum.' The mortgage described one promissory note, being the promissory note of $17,500.00, which was filed by the Peoples Bank, defendant herein, as Exhibit 'A' to its separate answer, and referred to in Paragraph 12 above.

"14.

"On November 16, 1957, North Arkansas Milling Company, Inc. was not obligated to any other creditor except open accounts or current accounts payable and the notes payable to Archer-Daniels-Midland Company, which were secured by Chattel

mortgages on chickens, and/or turkeys. The personal property and chattels covered by the chattel mortgage, identified as Exhibit 'B' to this defendant's separate answer, were unencumbered except as for the mortgage in favor of the Peoples Bank, of November 16, 1957, date.

## "15.

"In the early part of 1958, North Arkansas Milling Company, Inc. ran into financial difficulty in that the broiler market broke. The Peoples Bank extended to North Arkansas Milling Company, Inc. extension of time in payment of the indebtedness owed by said Milling Company to the Peoples Bank."

\*    \*    \*    \*    \*    \*

## "20.

"During the latter part of April 1959, Archer-Daniels-Midland Company made no further advances to North Arkansas Milling Company, Inc. for the purchase of grain and other ingredients necessary to manufacture chicken feed; and for approximately 30 days thereafter, Jackie Gene Stewart, individually, and North Arkansas Milling Company, Inc. exhausted all financial resources for the continued feeding of chickens then on feed, and that during such period Peoples Bank made the advances and loans evidenced by the promissory notes already set out above."

## "16.

"On May 4, 1959, a check drawn by North Arkansas Milling Company, Inc. on its account with the Peoples Bank of Mountain Home, Arkansas, in the sum of $1,934.76 was received by the Peoples Bank and there were insufficient funds in the account to cover the amount of the check, which check had been given in payment of grain by the North Arkansas Milling Company, Inc. North Arkansas Milling Company, Inc. immediately executed its promissory note payable upon demand in the sum of $1,934.76 and delivered same to the Peoples Bank, which promissory note was attached to this defendant's separate answer as Exhibit 'F'. On foreclosure date there was due thereon the sum of $1,934.76 principal and $247.21 interest.

## "17.

"On May 5, 1959, North Arkansas Milling Company, Inc. executed and delivered to the Peoples Bank of Mountain Home, Arkansas, its promissory note in the sum of $1,000.00, payable upon demand, proceeds of which were to be used for the purchase of grain to be used by North Arkansas Milling Company, Inc. in the manufacture of its feed products. This promissory note was filed by the defendant, Peoples Bank, as Exhibit 'G' to its answer. On foreclosure date there was due thereon the sum of $1,000.00 principal and $128.14 interest.

## "18.

"On May 5, 1959, North Arkansas Milling Company, Inc. executed its promissory note, payable to the Peoples Bank upon demand in the sum of $2,000.00, proceeds of which were for the purchase of grain and other ingredients necessary for the operation of North Arkansas Milling Company, Inc.'s business. Such note appears as Exhibit 'D' to the answer of defendant, Peoples Bank. On foreclosure date, there was due thereon $2,000.00 as principal and $256.09 as interest.

## "19.

"On May 22, 1959, North Arkansas Milling Company, Inc. executed and delivered to the Peoples Bank its promissory note in the sum of $2,000.00, payable in ten days, which was for the purchase of grain and feed, and which promissory note was attached to this defendant's separate answer as Exhibit 'E'. On foreclosure date, there was due

thereon the sum of $1,000.00 principal and $156.56 interest."

\* \* \* \* \* \*

"22.

"On May 29, 1959, North Arkansas Milling Company, Inc. executed and delivered its promissory note to Archer-Daniels-Midland Company in the sum of $19,829.97, payable on or before November 29, 1959, bearing interest at the rate of 6 percent per annum; such note is marked Exhibit 'B' to plaintiff's complaint. On the same day, North Arkansas Milling Company, Inc. and Jack Stewart individually executed and delivered to Archer-Daniels-Midland Company a written contract wherein North Arkansas Milling Company, Inc. and Jack Stewart promised to pay to Archer-Daniels-Midland Company the sum of $157,008.17, which contract is Exhibit 'A' to plaintiff's complaint. On the same day, North Arkansas Milling Company, Inc., in order to secure such note and contract, did execute and deliver to Archer-Daniels-Midland Company a chattel mortgage covering the assets of North Arkansas Milling Company, Inc., which list of assets was approximately the same as listed under the Peoples Bank's mortgage, as set out in Paragraph 13 above, and which mortgage to Archer-Daniels-Midland Company is set forth as Exhibit 'D' to plaintiff's complaint. \* \* \*"

Jurisdiction of the court is based upon diversity of citizenship and the requisite amount involved. Therefore, the substantive law of Arkansas applies.

The decisions of the Supreme Court of Arkansas applicable to the other indebtedness of the mortgagor, not specifically described in the security instrument, were reviewed and analyzed in the recent case of National Bank of Eastern Arkansas v. Blankenship, 177 F.Supp. 667 (E.D.Ark.1959), aff'd 8 Cir., 283 F.2d 574. Generally, the so-called "dragnet clauses" in mortgages are sustained in Arkansas, even though they are strictly construed. The court in the Blankenship case, supra, spelled out the specific applicable rule when the "other indebtedness," either antecedent or subsequent, is secured by a prior mortgage. Beginning at page 673 of 177 F.Supp., the court referred to Hendrickson v. Farmers' Bank & Trust Co., 189 Ark. 423, 73 S.W.2d 725, and stated:

"In Hendrickson, supra, the Court stated:

" 'As suggested by our early cases, in the construction of a mortgage the real question is, "what was the intention of the parties to the mortgage?" In determining this, all the circumstances attendant upon the execution of the mortgage and the nature of the transaction itself are to be considered \* \* \*; and, in order to extend the intention of the parties beyond the primary purpose of the mortgage so as to secure the payment of debts other than those specifically mentioned, from our decisions and principles of natural justice the following rule may be deduced; Where a mortgage is given to secure a specific debt named, the security will not be extended as to antecedent debts unless the instrument so provides and identifies those intended to be secured in clear terms, and, to be extended to cover debts subsequently incurred, these must be of the same class and so related to the primary debt secured that the assent of the mortgagor will be inferred. The reason is that mortgages, by the use of general terms, ought never to be so extended as to secure debts which the debtor did not contemplate. "Where one contracts in good faith with a debtor that security given should include not only that specifically mentioned in the mortgage but other indebtedness, whether existing then or to be incurred in the future, it is not difficult to describe the nature and character thereof so that both the debtor and third parties may be fully advised as to the extent of the

mortgage." American Bank & Trust Co. v. First National Bank of Paris, supra.' 184 Ark. 689, 43 S.W.2d 248, 251, 189 Ark. at pages 433–434, 73 S.W.2d at page 729.

"In a slightly earlier portion of the opinion the Court, in differentiating between the description to be given to an antecedent debt and that to be used in connection with future advances, said: 'A debt created subsequent to the mortgage, being not yet in existence, may not in all cases be clearly indicated; whereas, antecedent debts may always be definitely stated, and for this reason the general expression, "other indebtedness," would usually be treated as referring not to an antecedent debt but to one subsequently incurred. Detroit Fire & Marine Ins. Co. v. Helms, 184 Ark. 308, 42 S.W.2d 394; First National Bank of Corning v. Corning Bank & Trust Co., 168 Ark. 17, 268 S.W. 606, 607. In the latter case it was decided, after naming a particular debt secured, that the expression, "together with all other indebtedness which may be due," would not cover antecedent debt evidenced by notes, but only advances subsequently made.' Ibid., 189 Ark. at page 432–433, 73 S.W.2d at page 729."

The first of the notes to be considered is the one executed on September 24, 1957, which was prior to the execution of the mortgage to the bank. Since it is stipulated as having been made to secure current operating capital, there is no doubt that it could be included in the same general class of indebtedness as that secured by the chattel mortgage subsequently made. However, under the rules set out above such antecedent note should have been specifically described in the mortgage itself. The mortgage filed by the defendant as Exhibit A to its separate answer does not specifically identify this antecedent note in its "dragnet clause" which is a part of the printed form. Therefore, it would appear that the intention of the parties was not to secure this pre-existing debt in the mortgage itself.

The other notes dated May 4, 5 and 22, 1959, subsequent to the date of the mortgage, are subsequent indebtedness, and the "dragnet clause" in the printed form of the chattel mortgage is controlling. The question to be determined in connection therewith is whether the subsequent indebtedness is of the same class and so related to the primary debt secured that the assent of the mortgagor will be inferred.

The note executed on November 16, 1957, secured by the chattel mortgage, was made in part to provide additional working capital for the operation of North Arkansas, including the procurement of grain and other ingredients necessary for the preparation of feed and the delivery thereof. The subsequent notes were executed to obtain funds for the purchase of grain to be used by North Arkansas in the manufacture of its feed products and for purchase of other ingredients necessary for the operation of its business. It takes no stretch of the imagination to see that the purpose of executing these notes was to secure money with which to carry on the current operation of North Arkansas, which was one of the two main objects of North Arkansas when it executed its note of November 16, 1957, which was secured by the chattel mortgage in question.

The only question as to whether any of these subsequent notes are of the same general class of indebtedness as embodied in the note secured by the chattel mortgage pertains to the note made May 4, 1959. This note was executed in order to provide sufficient funds for a check drawn by North Arkansas on its account with the defendant bank. However, the fact that the check itself was drawn as payment for grain used by North Arkansas in its current operations would indicate that the note itself was executed for the furtherance of the operations as an ultimate end, and the covering of the bad check was merely a means to further that end.

Many of the Arkansas cases cited in the Blankenship case, as well as the Blankenship case itself, involve situations where there were multiple secured transactions between the mortgagor and mortgagee, or there was involved the intervention of a junior lien at some point in the course of the subsequent indebtedness, or the rights of third parties were affected. In the present case, since the junior lien of ADM ripened at a time subsequent to the execution of the latest note executed on May 22, 1959, and the fact that we are not dealing with the claims of other third parties, the sole issue before the court is the applicability of the "dragnet clause" in the chattel mortgage to the subsequent indebtedness incurred between the mortgagor, North Arkansas, and the mortgagee, defendant bank. The court can also disregard the question whether the subsequent indebtedness could extend past the date of maturity up to the time of foreclosure, for under the terms of the secured note of November 16, 1957, the date of maturity would have been several months past May 22, 1959, when the latest subsequent note in question was executed.

An Arkansas case which has been distinguished or explained by the Blankenship case and other Arkansas cases which have cited it because the court expressed no opinion as to what the effect would be if the rights of subsequent mortgagees were involved, is the case of Hollan v. American Bank of Commerce & Trust Co., 168 Ark. 939, 272 S.W. 654 (1925). Other than the fact that the court in the Hollan case was concerned over whether the subsequent indebtedness was secured after the date of maturity, the issues in this case were restricted to the same scope as in the present case. Beginning at page 941 of 168 Ark., at page 655 of 272 S.W., the court made the following statement which expressed its position on the applicability of "dragnet clauses" where the parties affected are restricted to the mortgagor and mortgagee:

"We must interpret the language of this mortgage to mean just what it says—that it secures any indebtedness incurred up to the time of the foreclosure. It is a matter of contract between the parties, as there is no limitation upon the right to contract with reference to the extent of the debt secured by a mortgage, and the province of the court is merely to interpret the language and declare the rights of the parties in accordance with their intention as expressed in the language used.

"It is next contended that this case falls within the ruling of the court in the recent case of Page v. American Bank of Commerce & Trust Co. [167] (Ark.) [607] 269 S.W. 561. In that case a series of chattel mortgages had been executed by the present appellants to the present appellee to secure separate notes, and there was a clause in each of the mortgages providing that it should be security 'for all other moneys, advances, goods, wares, merchandise, supplies, services, etc., furnished by the party of the second part (the bank) to the party of the first part (Hollan Auto Company) up to the foreclosure of this instrument.' In disposing of the case here, we said:

" 'We think the proper interpretation of the clause for advances in the several mortgages was to secure any additional advances which appellee might make on any particular shipment, and not secure independent loans secured by other mortgages on independent shipments. The clause was not intended to cover loans secured by separate mortgages on entirely different property, but to secure advances related and incident to each particular contract and shipment.'

"It will be observed that the clause of the mortgages involved in that case and the clause involved in this case are couched in entirely different language. In the former case it provided for the security of 'all other moneys, advances, goods, wares,

merchandise, supplies, services, etc.,' whilst in the present case the mortgage secures 'any other indebtedness of whatever kind or character that may be owing by grantor to said American Bank of Commerce & Trust Company up to the time of foreclosure of this deed of trust.' The former mortgages were restricted by the language to indebtedness incurred for advances, whereas the mortgage now before us embraces any kind of indebtedness. The language of the present mortgage is just about as broad as it is possible to make it. Nor does this case fall within the recent decision of this court in Lightle v. Rotenberry, 166 Ark. 337, 266 S.W. 297, where it was held that a mortgage providing that it should be security 'for the payment of any other liability or liabilities of grantor already or hereafter contracted' did not embrace obligations of the mortgagor held by the bank as collateral security for the debt of another person. In interpreting the language of the mortgage in that case, we said that it had reference to liabilities which had directly arisen between the mortgagor and mortgagee. The language in the present case is far broader, for it reads, 'other indebtedness of whatever kind or character that may be owing.' It is difficult to imagine how more appropriate language could have been used by the parties with the intention of accurately describing the particular kind of indebtedness involved in the present case. It is clear that the parties meant to include every kind of indebtedness or liability of appellants to the appellee, whether it arose directly or indirectly. * * *"

It appears from this opinion that the Supreme Court of Arkansas allows a more liberal construction of "dragnet clauses" as signifying the intention of the parties where there are no subsequent mortgagees or other third parties to be affected by a determination of the rights of the contracting parties alone. In the present case the rights of the subsequent mortgagee, ADM, do not ripen until the rights of the prior mortgagee, defendant bank, have been determined since there is no question of notice to the prior mortgagee at the time it loaned the mortgagor the funds evidenced by the subsequent notes.

As for the rights of third parties in general, there is no question but that those rights are of a lesser priority to the rights of the mortgagees in the present case.

■ The final question arises in that the plaintiff seeks to differentiate between the form of the notes in that two of them were time notes and four of them were demand notes. However, the Arkansas cases do not appear to distinguish the antecedent or subsequent indebtedness, as evidenced by promissory notes, on the basis of the form of the notes themselves, but whether the indebtedness represented by the notes is specifically identified by the security instrument in question, or whether the indebtedness is of the same general class as that indebtedness which has been secured. In conclusion, it can safely be said in answer to this particular contention of the plaintiff, as well as the issues presented by the case now before the court, that the Supreme Court of Arkansas will look to substance and not form alone as pertains to a contract between two parties.

■ The claim of the Peoples Bank of Mountain Home, Arkansas, on the note for the principal sum of $1,200.00, dated September 24, 1957, while valid between the parties thereto, is not prior and paramount to the claim of Archer-Daniels-Midland Company, but the claim of the bank for the balance due, principal and interest, on the notes executed November 16, 1957, May 4, 5, and 22, 1959, is prior and paramount to the claim of the plaintiff, Archer-Daniels-Midland Company; and the amount, when ascertained by calculation, due the Peoples Bank of Mountain Home, Arkansas, on

said notes should be paid first out of the funds now in the registry of the court, and the amount remaining after payment of said claim of Peoples Bank of Mountain Home, Arkansas, should be paid to the plaintiff, Archer-Daniels-Midland Company. The attorneys for the respective parties should proceed at once to ascertain and determine the respective amounts due, and prepare and forward said information to the court. Upon receipt of same, an order will be entered in accordance with the above, and the Clerk of the Court will be directed to make payment, as hereinbefore stated.