Frank J. FAHRENKAMP and Fierina G. Fahrenkamp, Plaintiffs,

v.

DUNCAN, DIECKMAN AND DUNCAN MINING COMPANY, a corporation, Defendant.

UNITED STATES of America, Intervenor,

v.

J. A. RIGGS TRACTOR CO. et al., Defendants on Intervention.

Civ. A. No. 1597.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Feb. 21, 1962.

---

Joe H. Hardegree, Mena, Ark., for plaintiffs.

Charles M. Conway, U. S. Atty., Fort Smith, Ark., for intervenor, United States.

Chowning, McHaney, Mitchell, Hamilton & Burrow, Little Rock, Ark., for defendant in intervention Little Rock Road Machinery Co.

Luke Arnett, Little Rock, Ark., for defendant on intervention C. R. Thornborough, Commissioner of Labor.

Ben Core, DeQueen, Ark., for defendants in intervention Luke Lawrence, J. R. Wood, Lola Wood and Delinquent Tax Assessor for Polk County, Arkansas.

No appearance for defendant mining corporation.

No appearance by J. A. Riggs Tractor Co., C. I. T. Corp., Gulf Oil Co., or American Cyanamid Co., defendants on intervention.

JOHN E. MILLER, Chief Judge.

On May 11, 1961, the plaintiffs filed their complaint in the Chancery Court of Polk County, Arkansas, against the defendant corporation, seeking a judgment against the defendant for the sum of $18,178.14, and interest thereon, and for the foreclosure of a chattel mortgage executed by defendant to one C. C. Bell on March 4, 1959, and subsequently assigned by the said C. C. Bell to the plaintiffs.

The defendant, although duly served with summons, has not answered and is wholly in default.

On May 31, 1961, the intervenor, United States of America, filed its intervention in the state court and alleged therein:

"The defendant, Duncan, Dieckman and Duncan Mining Company, has no other assets and is now out of business, has many judgment creditors and creditors who have liens on said chattels set forth in the plaintiffs' complaint."

Then follows a list of certain persons, firms and corporations that are alleged to be creditors of the defendant. Following the filing of the intervention in the state court, the intervenor removed the case to this court on June 2, 1961, and proceeded to file its complaint in intervention and alleged that it had filed certain tax liens for unpaid taxes in Scott and Polk Counties, Arkansas, against the defendant as follows: August 13, 1959, $2,207.07; September 9, 1959, $2,507.71; November 24, 1959, $1,189.97; August 17, 1960, $1,373.31, or a total of $7,278.06.

The intervenor also set forth in its intervention the names and addresses of the persons, firms and corporations to whom the defendant was indebted in various amounts represented by judgments, mortgages or other instruments. Summonses were issued on the intervention against said parties and most, if not all of them, have filed answers and claims herein, but the conclusion reached by the court makes it unnecessary to further consider the claims of any of them other than the plaintiffs and the intervenor.

The mortgage, plaintiffs' exhibit 1, was executed to secure the payment of the principal sum of $15,000.00 evidenced by a promissory note executed by defendant to the order of C. C. Bell, which note and mortgage, as above stated, were assigned by C. C. Bell to plaintiffs. Certain property is specifically described in the mortgage, and no one is contending that the plaintiffs are not entitled to a lien upon the property specifically described in the mortgage or to the proceeds of the sale of said property under the order of the court.

The mortgage also contains a provision intended to extend the lien of the mortgage to other property not specifically described therein. The material parts of the "dragnet" clause are: " * * * together with all equipment of any kind and character used in connection therewith, and all additions, betterments and repairs made or to be made to or upon said property, situated in the County of Polk and State of Arkansas * * *."

In paragraph IV of the complaint the plaintiffs alleged:

"On or about August 21, 1959, Plaintiff advanced the sum of Three Thousand One Hundred Seventy-Eight and 14/100 Dollars ($3,178.14) to creditors of the Defendant company for the purpose of paying in full to such creditors debts owed them by the Defendant, and assuming from such creditors all security instruments held by them and all claim of such creditors in, upon and against the property of Defendant.

"Particularly, Plaintiff would allege that he caused Draft No. 32583 to be issued by Unity Savings and Loan Association of St. Louis, Missouri, to Merchants National Bank, Automobile Department, Fort Smith, Arkansas, in the amount of Six Hundred Seventeen and no/100 Dollars ($617.00), for full payment of the debt of Defendant on the purchase and financing of the following property:

"Ford Loader NCA 840 Serial No. 144239

Further, Plaintiff would allege that on the same August 21, 1959, he caused to be issued by the Unity Savings and Loan Association of St. Louis, Missouri, a draft numbered 32584 in favor of C. I. T. Credit Corporation—Memphis, Tennessee, in the amount of Two Thousand Five Hundred Sixty One and 14/100 Dollars ($2,561.14), for full payment of the debt of Defendant in the purchasing

and financing of the following property:

"Caterpillar Loader
No. 933–11A1445
"Caterpillar Loader
No. 933–11A1208

these checks were issued the holders of conditional sale contracts covering the property described, and that in each instance Plaintiff assumed the security represented by such instruments against the Defendant corporation, and that since the time of payment of the said amounts, totalling Three Thousand One Hundred Seventy-Eight and 14/100 Dollars ($3,178.14), Defendant has made no payment whatever on the said debts for said equipment."

In its complaint in intervention, the intervenor, United States of America, alleged:

"Intervenor states that plaintiff has no assignment, conditional sales contracts upon the equipment and personal property described in Paragraph 4 of the plaintiffs' Complaint and, therefore, the plaintiff has no lien upon this equipment and property."

On October 16, 1961, the court sustained the motion of plaintiffs for immediate sale of the property herein involved, and appointed Clyde Hawkins, Sheriff of Scott County, Arkansas, as Commissioner for the purpose of attaching the property and conducting a sale thereof upon the terms and conditions set forth in the writ of attachment.

The Commissioner assembled the property and gave due notice of the sale and after due advertisement he proceeded to sell the property on October 30, 1961, in accordance with the terms of the order of the court, at which sale all of the property specifically described in the mortgage, except a certain Schram Air Compressor, Serial No. 98675, which could not be located and was thought to have been stolen, was sold to the highest bidder, together with Caterpillar Loader No. 933-11A1445 and Caterpillar Loader No. 933–11A1208, for the total sum of $11,150.00. The expenses of the sale were $701.74 which the court ordered paid, and the balance of $10,448.26 was deposited by the Commissioner in the registry of the court.

Prior to the entry of the order of sale Mr. Donald Duncan, an official of the defendant corporation, filed an interpleader, in which he stated that he had come into the possession and control of the Fordson Tractor NCA 840 and Davis Loader Serial No. 144239, heretofore mentioned, which deposited in the registry of the court for distribution to the creditors of the corporation. The money was accordingly deposited and there is now in the registry of the court the sum of $11,898.26 for distribution.

The case was duly set for trial and all parties notified. There appeared at the trial on January 10, 1962, only the plaintiffs and the United States of America. The trial proceeded, and at the conclusion thereof the court directed that the attorney for the plaintiffs and the United States Attorney, representing the intervenor, submit briefs in support of their respective contentions.

In the brief for the intervenor the question for decision is stated by the United States Attorney, as follows:

"The sole question for consideration before the court at the present time is whether either of the plaintiffs, Frank J. Fahrenkamp or Fierina G. Fahrenkamp, has a lien upon the proceeds of the sale of Caterpillar Loader No. 933–11A1445, Caterpillar Loader No. 933–11A1208, and Ford Loader No. 144239."

(The plaintiffs in their complaint described the latter as "Ford Loader NCA 840, serial No. 144239." The interpleader, Mr. Donald Duncan, described the same equipment as "Fordson Tractor NCA 840 and Davis Loader Serial No. 144239.")

The chattel mortgage was duly executed on March 4, 1959, and was filed for record on March 23, 1959. The indebtedness secured by the mortgage has

not been paid, and is long past due. At the time the mortgage was executed, the C. I. T. Credit Corporation held title to the Caterpillar loaders by assignment, and the Merchants National Bank, Automobile Department, Fort Smith, Arkansas, held by assignment the title to the Ford loader equipment.

This equipment was in the possession of the defendant corporation and used by it in its mining operation. This particular equipment was not specifically described in the mortgage probably for the reason that the title was not vested in the corporation at that time.

The principal market for the ore that was being mined by the defendant corporation was the United States of America, which had entered into a contract with the corporation to purchase the ore, but that contract was canceled sometime in August 1959. About that time the plaintiffs discovered that the equipment above described had been used and was then in the corporation's possession, but that there was a balance due on the purchase price of the equipment. At the request of the officials of the corporation, the plaintiffs caused to be paid the balance due the C. I. T. Credit Corporation on the equipment in the amount of $2,561.-14, and the balance due the Merchants National Bank of Fort Smith in the amount of $617.00. The corporation was to procure an assignment to plaintiffs of the conditional sales contracts, but the plaintiffs stated that if they ever received the contracts from the corporation that they had been lost or mislaid, and therefore they were not presented at the trial. However, there is no doubt that the balance due under the contracts was paid by the plaintiffs and at the time the property was in the possession of the defendant corporation and was equipment of the kind and character used by the corporation in connection with its mining operations.

The intervenor, United States of America, earnestly contends that the plaintiffs did not acquire under the mortgage a lien upon the equipment that was not specifically described in the mortgage, and has cited certain decisions of the Supreme Court of Arkansas in support of its contention. The court has examined the decisions relied upon by the intervenor, as well as the decisions cited by the plaintiffs in support of their contentions.

On December 2, 1961, this court considered a similar question and filed a memorandum opinion in the case of Archer-Daniels-Midland Company v. North Arkansas Milling Co., Inc., 205 F.Supp. 524. In the consideration of the question in that case, this court quoted rather extensively from the opinion of Judge Henley of the Eastern District of Arkansas in National Bank of Eastern Arkansas v. Blankenship, D.C., 177 F.Supp. 667, aff'd Nov. 8, 1960, 8 Cir., 283 F.2d 574, where the court, beginning at page 672 of 177 F.Supp., said:

> "There is no question that under Arkansas law the parties to a mortgage or deed of trust may by contract extend the lien thereof to obligations other than those specifically described in the instrument, provided they express their intent to do so with sufficient definiteness. (Citing cases.) Every mortgage is to be interpreted in the light of its own language, and 'as there is no limitation upon the right to contract with reference to the extent of the debt secured by a mortgage * * * the province of the court is merely to interpret the language and declare the rights of the parties in accordance with their intentions as expressed in the language used.' Hollan v. American Bank of Commerce & Trust Co., supra, 168 Ark. at page 941, 272 S.W. at page 655."

On page 673 of 177 F.Supp., Judge Henley further said:

> "The 'other indebtedness' secured by a mortgage may be either antecedent or subsequent. Where it is antecedent, it must be identified in clear terms, and where it is subsequent, it must be of the same class as the primary obligation secured

by the instrument and so related to it that the consent of the debtor to its inclusion may be inferred."

See: Hendrickson v. Farmers Bank & Trust Co., 189 Ark. 423, 73 S.W.2d 725; Bank of Searcy v. Kroh, 195 Ark. 785, 114 S.W.2d 26.

■ The court is of the opinion that under the terms of the "dragnet" clause hereinbefore set forth that it was the intention of the parties to the mortgage to include all the equipment that was added to or used in the mining operations, and therefore must conclude that the lien of the mortgage extended to and covered the equipment.

■ The intervenor further contends that since it is not definitely established that either the Merchants National Bank or the C. I. T. Credit Corporation actually assigned their interest in the equipment involved herein to the plaintiffs, that the plaintiffs' mortgage lien did not attach to the equipment, but the court is of the opinion that under the facts the action of the two creditors in accepting the payment of their debts from the plaintiffs is sufficient and justifies the court in holding that it was the intention of all parties concerned that the title to the equipment so paid for should inure to the defendant corporation, and thus the lien of the mortgage was thereby extended to and covered such equipment. See, McCourtney v. Ellington, 215 Ark. 539, 221 S.W.2d 410.

Title 26 U.S.C., § 6321, provides:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Section 6322 provides:

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time."

Section 6323 provides:

"(a) Invalidity of lien without notice.—Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—

"(1) Under state or territorial laws.—In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice; or * * *"

Ark.Stat.Ann., § 51–101 (1947), provides:

"Notices of liens for taxes payable to the United States of America and certificates discharging such liens shall be filed in the office of the Circuit Clerk of the county or counties in this State, within which the property subject to such lien is situated."

The Arkansas statute was enacted for the purpose of authorizing the filing of notices of tax liens by the United States, and the act prescribes the procedure that should be followed.

■ On August 13, 1959, the intervenor, United States of America, filed its first notice in both Scott and Polk Counties, Arkansas, reciting that the Government claimed a lien upon the property of the defendant corporation for $2,207.07. Other notices were filed on September 9, 1959, and November 24, 1959, and the last notice was filed August 17, 1960, but upon the date of filing of the first notice, the mortgage held by plaintiffs was duly of record and had been filed for record since March 23, 1959. Therefore the lien

of the mortgage had attached and was superior to the liens sought to be established by the intervenor, United States of America. The defendant corporation did not acquire full title to the equipment of which the intervenor now complains until the date of the payment by the plaintiffs of the balance due on the purchase money contracts, which occurred on August 21, 1959, but upon the payment of the purchase money by the plaintiffs at the request of the debtor defendant corporation, the lien that was created by the mortgage, and which had been filed for record many months before, attached as of the date of the filing of the mortgage for record. Therefore, the lien of the plaintiffs is prior and paramount to the tax liens of the intervenor, United States of America.

None of the defendants on intervention, or those who have separately and independently intervened, are entitled to participate in the distribution of the funds in the registry of the court, except Polk County, Arkansas, as hereinafter set forth.

Clyde Hawkins as Commissioner should be paid the sum of $250.00 as his fee and personal expenses for making the sale of the mortgaged property.

There is no question but that the defendant corporation is indebted to the plaintiffs in the sum of $13,750.00 with interest thereon at 6 percent per annum from April 10, 1959, together with the sum of $3,178.14 with interest thereon from August 21, 1959, at 6 percent per annum, and judgment should be entered for plaintiffs against the defendant for the said sum of $16,928.14, with interest as above stated, plus the sum of $500.00 for attorney's fees as alleged in the complaint.

Polk County, Arkansas, filed its intervention herein to recover the sum of $321.34 for the taxes, penalties and costs due the County for the nonpayment of taxes assessed against the property for the years 1959 and 1960. At the trial of the case the attorney for the plaintiffs stated that he desired to further investigate the claim of Polk County, and the court advised him that time would be granted for that purpose. Apparently no such investigation has been made and no further contention in that connection has been made by the plaintiffs.

The court is of the opinion that Polk County, Arkansas, is entitled to recover the said sum of $321.34 from the plaintiffs for the taxes due on said property, and its lien is superior to the lien of plaintiffs.

Therefore judgment will be entered as follows:

For plaintiffs in the sum of $16,928.14, with interest as hereinbefore set forth, together with $500.00 attorney's fee;

Dismissing the intervention of the intervenor, United States of America, and all other interventions and claims, except that of Polk County, Arkansas;

Directing the Clerk to pay to the Treasurer of Polk County, Arkansas, the sum of $321.34 for taxes, penalties, and costs; the plaintiffs the sum of $11,326.-92; and Clyde Hawkins the sum of $250.-00 as his fee and personal expenses in making the sale.